**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| SPENCER BANK, S.L.A., | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | Civ. No. 07-1337 (WHW) |
| LAWRENCE B. SEIDMAN, SEIDMAN & ASSOCIATES, LLC, VETERI PLACE CORPORATION, and MENLO ACQUISITION CORPORATION, | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Lawrence B. Seidman, Seidman & Associates, LLC ("S&A"), and Veteri Place Corporation ("Veteri") move to dismiss the Complaint of Plaintiff Spencer Bank, S.L.A. ("Spencer") for failure to state a claim upon which relief can be granted. Defendant Menlo Acquisition Corporation ("Menlo") joins in that motion. The motion to dismiss is granted with prejudice.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiff Spencer is a state-chartered mutual savings and loan association, which has operated for more than sixty-five years. (Compl. ¶ 6.) Defendant Seidman is a private investor and one of Plaintiff's depositors. (Id. ¶ 7.) According to Plaintiff, Defendants S&A, Veteri, and Menlo are each either owned or controlled by Seidman. (Id. ¶¶ 8-10.)

**FOR PUBLICATION**

Plaintiff alleges that since 1989, Seidman, in concert with co-Defendants and a group of mutually interested and associated individuals and companies known collectively as his "confederates," has targeted and acquired interests in at least twenty-four financial institutions, including commercial banks, savings institutions, and mutual associations. (Id. ¶¶ 38, 57.) Of those twenty-four financial institutions, seventeen were savings institutions. (Id. ¶ 57.) Plaintiff claims that Defendants and their confederates employ "wolf-pack" tactics, threaten and engage in proxy contests, initiate lawsuits, compel "greenmail," and induce tender offers to influence the boards of directors of the savings institutions in which they hold interests into seeking to merge with or to be acquired by another institution. (Id. ¶ 42.) Plaintiff asserts that Defendants and their confederates also engage in extensive publicity campaigns, including writing letters, making telephone calls, and making public securities filings, in order to effect their takeover goals. (Id. ¶¶ 43-44.) Plaintiff believes these publicity campaigns are often used to signal to confederates the next takeover target. (Id. ¶ 45.) Plaintiff says that the savings institutions are sold at a significant premium and that Defendants and their confederates, in turn, reap large profits. (Id. ¶ 41.) According to Plaintiff, sixteen of the seventeen savings institutions targeted by Defendants and their confederates have announced agreements to merge with or to be acquired by other institutions within one to two years of Defendants and their confederates' initial involvement. (Id. ¶ 57.)

According to Plaintiff, Defendants and their confederates have engaged in "a pattern of secretive and unlawful joint and parallel activity, have repeatedly acquired significant ownership interests in targeted savings institutions with the common goal to intimidate and influence the

**FOR PUBLICATION**

savings institution's [sic] board of directors to seek sales of the institutions." (Id. ¶ 54.) Plaintiff believes that Defendants and their confederates have together held the beneficial ownership of at least ten percent of the voting shares of certain targeted institutions, resulting in their being one of the two largest holders of the targeted institutions' voting shares. (Id. ¶¶ 55, 59.) Plaintiff alleges that Defendants and their confederates consist of a "company" within the meaning of the Savings and Loan Holding Company Act (the "SLHCA"), codified in 12 U.S.C. § 1467a. (Id. ¶¶ 61-63.)

Plaintiff claims that Defendants and a number of their confederates are now seeking to control Plaintiff through soliciting the nomination of Seidman and/or confederates Frank Russomanno and Raymond Vanaria to Plaintiff's Board of Directors. (Id. ¶¶ 64-65.) According to Plaintiff, Defendants and/or their confederates have taken the following actions in an effort to influence or gain control of Plaintiff in order to force a mutual to stock conversion and, later, a sale or merger – (1) opened deposit accounts to increase their voting rights; (2) from April through June 2004, contacted Plaintiff's President and CEO Jose Guerrero via telephone and written letters to berate him about recent operational and business decisions; (3) on October 4, 2004, wrote a letter to Guerrero nominating Seidman and confederate Russomanno for election to Plaintiff's Board and requesting a list of Plaintiff's depositor members because Plaintiff's by-laws require any potential nominee to the Board to obtain twenty percent or more of the votes entitled to be cast by members in order to be nominated as a candidate to the Board; (4) on October 12, 2004, wrote a letter to Plaintiff's depositor members ridiculing the Board and seeking the nomination of Seidman and Russomanno as candidates for election to the Board; (5)

**FOR PUBLICATION**

on October 20, 2004, solicited proxies from Plaintiff's depositor members by handing out a letter and petition in the parking lot of one of Plaintiff's branches in an attempt to secure the votes to become a candidate for the Board; and (6) in October 2004, initiated a lawsuit against Plaintiff and the Board in New Jersey state court, alleging breaches of fiduciary duty.  (Id. ¶ 67.)  Plaintiff states that when challenges were made with respect to Seidman's motive and qualifications to be elected to the Board, he substituted confederate Vanaria as a candidate.  (Id. ¶¶ 68-69.)

On March 22, 2007, Plaintiff initiated this action against Defendants, alleging violations of the SLHCA and specifically of § 1467a(h)(1) of the SLHCA.  According to Plaintiff, "Defendants have unlawfully attempted to influence the board of directors of a mutual association and to secure a position on Spencer's board of directors."  (Id. ¶ 1.)  Defendants Seidman, S&A, and Veteri brought a motion to dismiss, which Menlo later joined, arguing that the SLHCA, and specifically § 1467a(h)(1), does not provide for an implied private right of action or, alternatively, that if the statute does provide for such an implied private right of action, Defendants are not subject to the terms of the statute.

Along with its opposition brief, Plaintiff submitted as exhibits to Plaintiff's counsel's affidavit the position papers/memoranda of five banking associations supporting Plaintiff's arguments in favor of the inference of a private right of action in the SLHCA and specifically § 1467a(h)(1).  (See Aff. of Gregory T. Casamento Exs. 2-6.)  The Court also received a letter from the Office of Thrift Supervision (the "OTS"), an independent office within the United States Department of Treasury which is responsible for regulating the savings and loan industry, providing background information about the savings and loan industry and affirming that the

**FOR PUBLICATION**

"OTS believes strongly in the mutual form of organization and is a proponent of mutuality," but stating that the "OTS is not fully informed as to the underlying facts of this case and, accordingly, . . . do[es] not think it is appropriate for [it] to express any further opinions or views on the issues before the Court at this time."  (Id. Ex. 12.)

In reply Defendants Seidman, S&A, and Veteri advanced the additional argument that New Jersey's entire controversy doctrine bars Plaintiff's claims in this action.  In its letter stating its intent to join Defendants Seidman, S&A, and Veteri in their motion, Defendant Menlo also asserted that it is not a depositor or member of Plaintiff, preventing its liability in this action.

The Court heard oral argument on the motion on December 6, 2007.

**LEGAL STANDARD**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is required to accept as true all allegations in the complaint and draw all reasonable inferences in the light most favorable to the non-moving party.  Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 272 (3d Cir. 2001) (citation omitted).  The question is whether the claimant can prove any set of facts consistent with his allegations that will entitle him to relief, not whether that person will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citation omitted).

Although a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation.  See Doug Grant, Inc. v. Greate Bay Casino

FOR PUBLICATION

Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)).  Moreover, the claimant must "'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 340 (2d ed. 1990)).  The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see also 5A Wright & Miller, Federal Practice & Procedure § 1357, at 299.

"[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted)).  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."  In re Burlington Coat Factory, 114 F.3d at 1426.

**DISCUSSION**

In their supporting and reply briefs, Defendants Seidman, S&A, and Veteri offer three arguments as to why Plaintiff Spencer's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted – (1) the SLHCA, and specifically 12 U.S.C. § 1467a(h)(1), does not provide for an implied private right

FOR PUBLICATION

of action; (2) Defendants are not subject to the terms of the statute; and (3) New Jersey's entire controversy doctrine bars Plaintiff's claims. Defendant Menlo also presents the argument that because it is not one of Plaintiff's depositors, it cannot be held liable in this action.

The Court concludes that the SLHCA, and specifically § 1467a(h)(1), does not contain an implied private right of action and that Defendants' motion to dismiss should be granted on those grounds.[1] As a result the Court finds Defendants' additional arguments moot.[2]

### 1.  Standard

Before determining whether § 1467a(h)(1) of the SLHCA contains an implied private right of action, the Court must determine if the express terms of the statute provide for a private right of action. As Plaintiff concedes in its brief, (see Pl.'s Br. 10 ("[T]he [SLHCA] does not explicitly provide or prohibit a private cause of action for a savings association.")), the SLHCA does not provide for a private right of action, as its terms only speak of prohibited activities, manners of regulation, and enforcement mechanisms entrusted to the Director of the OTS.

---

[1] Despite Plaintiff's protest in its letter from June 19, 2007, that Defendant Menlo "never made a timely motion to dismiss, nor did it answer the complaint," so "Menlo is presently in default," the Court dismisses Plaintiff's Complaint on those grounds with respect to Menlo as well. Under the Federal Rules of Civil Procedure, a party cannot waive a motion to dismiss brought pursuant to Rule 12(b)(6), and, furthermore, Plaintiff is not prejudiced by Menlo's joinder in its co-Defendants' motion.

[2] The Court adds, however, that Defendants are premature in predicating one of their arguments in favor of their motion to dismiss on the entire controversy doctrine. Although one of Plaintiff's allegations does state that "[i]n October, 2004, Seidman commenced a lawsuit in New Jersey state court against Spencer and its entire Board of Directors" and that "[t]he lawsuit alleges breaches of fiduciary duty, and attacks the bank and its Board for attempting to fend off Seidman's unlawful campaign to gain control of Spencer," (Compl. ¶ 70), the Court cannot dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the entire controversy doctrine because "[t]he claimed Entire Controversy bar in this matter [is] not 'apparent on the face of the complaint.'" Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997) (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)); see Aruanno v. Cape May County Jail, No. 02-1395, 2007 WL 708987, at *4 n.1 (3d Cir. Mar. 8, 2007).

**FOR PUBLICATION**

The key to determining whether a plaintiff has an implied private right of action under any statute is congressional intent. Alexander v. Sandoval, 532 U.S. 275, 286 (2001); Thompson v. Thompson, 484 U.S. 174, 179 (1988); Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979); Am. Trucking Ass'ns v. Del. River Joint Toll Bridge Comm'n, 458 F.3d 291, 296 (3d Cir. 2006) (citation omitted). In Cort v. Ash, 422 U.S. 66 (1975), the Supreme Court proposed four factors that serve as guides to discerning Congress's intent. Thompson, 484 U.S. at 179; Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh, 382 F.3d 412, 421 (3d Cir. 2004). The four Cort factors are:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" – that is does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78 (citations omitted). The Third Circuit has held that among these four factors, "'[t]he first two criteria are critical'" and that "[i]f they do not point toward a private right, the remaining two 'cannot by themselves be a basis for implying a right of action.'" Three Rivers, 382 F.3d at 421 (quoting Am. Tel. & Tel. Co. v. M/V Cape Fear, 967 F.2d 864, 866 (3d Cir. 1992) (quotation omitted)). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander, 532 U.S. at 286. Although the Supreme Court has stated that "Congress' 'intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment,'" Thompson, 484 U.S. at 179 (quoting Transamerica Mortgage Advisors, Inc. v.

**FOR PUBLICATION**

Lewis, 444 U.S. 11, 18 (1979)), it later clarified that "[i]n determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text," Alexander, 532 U.S. at 288 (citation omitted).

A court may find an implied private right of action "'only where it can confidently conclude Congress so intended.'"  Am. Trucking Ass'ns, 458 F.3d at 303 (quoting State of N.J., Dep't of Env't Prot. & Energy v. Long Island Power Auth., 30 F.3d 403, 421 (3d Cir. 1994)).  "It is not the province of a federal court to confer rights where statutory language is silent, or to 'engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.'" Id. (quoting California v. Sierra Club, 451 U.S. 287, 297 (1981)); see also Alexander, 532 U.S. at 286-87 ("Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.").  Notably, the Supreme Court has "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." Sosa v. Alvarez-Machain, 542 U.S. 692, 727 (2004) (citations omitted); see also Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 67 n.3 (2001) ("Since our decision in Borak [in 1964], we have retreated from our previous willingness to imply a cause of action where Congress has not provided one.").

    **2.**    **Analysis**

Both Defendants and Plaintiff have briefed the issue of whether the SLHCA, and specifically § 1467a(h)(1), establishes an implied private right of action by using the four Cort factors as a template.  Because the Third Circuit has emphasized the importance of the first two

**FOR PUBLICATION**

factors and because the Court concludes that Plaintiff is unable to satisfy either of those factors, the Court confines its analysis of whether the SLHCA, and specifically § 1467a(h)(1), establishes an implied private right of action to the first two Cort factors.

> **A.   Whether Plaintiff is one of the class for whose especial benefit § 1467a(h)(1) was enacted – that is, whether § 1467a(h)(1) creates a federal right in favor of Plaintiff**

In resolving the first Cort factor, a court must "look[] to the language of the statute itself." Cannon v. Univ. of Chi., 441 U.S. 677, 689 (1979); Am. Trucking Ass'ns, 458 F.3d at 297. With respect to this factor, however, "[t]he question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries." Sierra Club, 451 U.S. at 294; Am. Trucking Ass'ns, 458 F.3d at 297. According to the Supreme Court, "[w]here a statute does not include . . . explicit 'right- or duty-creating language,' [courts] rarely impute to Congress an intent to create a private right of action." Gonzaga Univ. v. Doe, 536 U.S. 273, 284 n.3 (2002) (citations omitted).

Defendants argue that "it is patent that [the SLHCA] was not adopted to especially benefit Savings and Loan Associations like Spencer; rather it was approved as part of an overall regulatory scheme." (Defs.' Br. 8.) Plaintiff, however, counters that "[i]t is indisputable that § 1467a(h)(1) is for the exclusive benefit of mutuals." (Pl.'s Br. 13.) Plaintiff argues that "[t]he key to determining whether Congress created rights for a protected party, such as Spencer, is whether that party is the focus of the statute." (Id.) According to Plaintiff, "savings institutions are the focus of the [SLHCA]," and "[m]oreover, mutual institutions, like Spencer, are exclusively protected in the [SLHCA]." (Id.) Additionally, Plaintiff asserts that "[a] review of

**FOR PUBLICATION**

the historical context of the [SLHCA] further demonstrates that Spencer was a member of the 'special class' for whom the [SLHCA] was enacted." (Id. 14.)

The Court concludes that Plaintiff is not one of the class for whose especial benefit § 1467a(h)(1) was enacted – that is, § 1467a(h)(1) does not create a federal right in favor of Plaintiff. Section 1467a(h)(1) reads:

> It shall be unlawful for –
> (1) any savings and loan holding company or subsidiary thereof, or any director, officer, employee, or person owning, controlling, or holding with power to vote, or holding proxies representing, more than 25 percent of the voting shares, of such holding company or subsidiary, to hold, solicit, or exercise any proxies in respect of any voting rights in a savings association which is a mutual association[.]

Plaintiff is correct that § 1467a(h)(1) benefits savings associations which are mutual associations. The issue is, however, whether "the plaintiff is 'one of the class for whose especial benefit the statute was enacted' – that is does the statute create a federal right in favor of the plaintiff?" Cort, 422 U.S. at 78. The statute provides no indication that Congress intended to confer a federal right upon Plaintiff. Despite Plaintiff's arguments to the contrary, (see Pl.'s Br. 13-14), the direct, unmistakable focus of § 1467a(h)(1) is upon savings and loan holding companies, not savings associations which are mutual associations. And when – the Supreme Court teaches – "[s]tatutes . . . focus on the person regulated rather than the individuals protected [they] create 'no implication of an intent to confer rights on a particular class of persons.'" Alexander, 532 U.S. at 289 (quoting Sierra Club, 451 U.S. at 294). Such are the circumstances here. And the Court is foreclosed from inferring a federal right.

FOR PUBLICATION

> **B.     Whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one**

Regarding the second Cort factor, Defendants argue that "there is no evidence that Congress intended to create a private remedy." (Defs.' Br. 8.) They claim that "the enactment of an administrative enforcement framework connotes a Congressional intent that all enforcement be by the designated regulator" and that "[h]ere, [the SLHCA] establishes a comprehensive scheme for administrative enforcement, granting the Director of the OTS with the authority to: investigate violations; initiate enforcement proceedings; secure injunctions; impose cease and desist orders; assess penalties." (Id. 8-9.)

Plaintiff answers that "an analysis of the [SLHCA] – its language and structure, legislative history and the context in which it was passed into law – provides ample evidence of Congressional intent from which this Court can imply a private right of action." (Pl.'s Br. 26.) According to Plaintiff, there are two factors that the Supreme Court has focused on "[i]n determining whether a statute's language evinced Congressional intent for a private right of action" – "whether the statute created rights for the party at issue and whether the enforcement mechanisms in the statute were compatible with a private right of action." (Id.) Plaintiff concludes that both factors are present in this case. (Id.) Plaintiff briefs that "[a] review of the legislative history does not reveal statements to the effect that Congress intended either to create or deny a private right of action." (Id.) Plaintiff believes that the Court should infer a private right of action because "a private right of action can be implied, even in the absence of express mention by Congress." (Id. 27.)

-12-

**FOR PUBLICATION**

A review of the text of the statute, as well as its legislative history, reveals no congressional intent to create a private remedy. Moreover, although there is no implicit or explicit denial of a private remedy, the language of both the statute and its legislative history indicates that the congressional intent in codifying the SLHCA was to provide a framework for the regulation of savings and loan holding companies by the United States Department of Treasury through the independent OTS. The Court holds that the SLHCA does not contain a private remedy.

Section 1467a(i) of the SLHCA lists "Penalties" for the violation of provisions of the section, with § 1467a(i)(1) providing criminal penalties and § 1467a(i)(2) and (3) providing civil money penalties. Under the civil money penalty subsections, the statute states that "[a]ny penalty imposed under subparagraph (A) may be assessed and collected by the Director [of the OTS]." § 1467a(i)(2)(B) & (3)(B). In addition, the Director of the OTS is empowered under § 1467a(g)(4), to bring an action in district court seeking an injunction, decree, restraining order, order of divestiture, or other appropriate order and under § 1467a(g)(5), to issue cease and desist orders, after notice and hearings, against savings and loan holding companies. In each of these cases, the SLHCA explicitly provides remedies resulting from a violation of the statute, but none of these are private remedies.

The legislative history of the SLHCA also confirms the statute's singular focus on regulation. The SLHCA, in its current form, was enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). Pub. L. No. 101-73, § 301, 103 Stat. 183, 277-343 (1989). According to its title, one of FIRREA's purposes was "to enhance the

**FOR PUBLICATION**

regulatory and enforcement powers of Federal financial institutions regulatory agencies." 103 Stat. at 183. FIRREA's codification resulted in the repeal of Title 4 of the National Housing Act. § 407, 103 Stat. at 363. As part of FIRREA, however, certain sections of Title 4 of the National Housing Act were transferred to other statutes, and of importance to this case, § 408 of the National Housing Act, which was the original location of the SLHCA, was transferred to § 10 of the Home Owners' Loan Act. See S. Rep. No. 101-19, at 342 (1989); H.R. Rep. 101-54(I), at 350, as reprinted in 1989 U.S.C.C.A.N. 86, 146.

Congress first enacted § 408 of the National Housing Act on September 23, 1959. See Pub. L. No. 86-374, 73 Stat. 691, 691-93 (1959). This Act, known as the Spence Act, was intended "[t]o promote and preserve local management of savings and loan associations by protecting them against encroachment by holding companies." 73 Stat. at 691. The legislative history states that "[t]he purpose of the bill . . . [was] to halt for a 2-year period the accelerating trend of acquisitions of stock savings and loan associations by savings and loan holding companies." S. Rep. No. 86-810, at 2883 (1959). During that two-year period, Congress requested that the Federal Home Loan Bank Board (the "FHLBB"), a predecessor agency to the OTS, "survey the situation carefully and thoroughly, and within a year . . . present to the Committees on Banking and Currency a full report on savings and loan holding companies, with its considered recommendations for legislation." Id. at 2883-84.

The FHLBB's report resulted in a wholesale revision of § 408 of the National Housing Act on February 14, 1968. See Savings and Loan Holding Company Amendments of 1967, Pub. L. No. 90-255, 82 Stat. 5, 5-15 (1968); H.R. Rep. No. 90-997 (1967), as reprinted in 1968

-14-

**FOR PUBLICATION**

U.S.C.C.A.N. 1601.  The Savings and Loan Holding Company Amendments of 1967 was "[t]o amend section 408 of the National Housing Act, as amended, to provide for the regulation of savings and loan holding companies and subsidiary companies." 82 Stat. at 5.  This became the first version of the current SLHCA, and § 408(i) mirrors 12 U.S.C. § 1467a(h)(1) for all purposes relevant to this case.

According to the legislative history of the Saving and Loan Holding Company Amendments of 1967, the Spence Act "was not intended to provide a comprehensive regulatory framework for holding companies." H.R. Rep. No. 90-997, 1968 U.S.C.C.A.N. at 1602.  Following the FHLBB's report and additional legislative recommendations, however, the Saving and Loan Holding Company Amendments of 1967 "embodie[d] the recommendations of the administration for a comprehensive statutory framework for holding companies as contemplated by the Spence Act" and "contain[ed], among other things, authorization for direct agency regulatory authority over certain holding company system activities." Id. at 1602, 1603.  As such, "[t]he purpose of [the Saving and Loan Holding Company Amendments] . . . [was] to provide a comprehensive statutory framework for the registration, examination and regulation of holding companies controlling one or more savings and loan associations." Id. at 1603.  Moreover, "[t]he [Federal Savings and Loan Insurance Corporation] in its administration and enforcement of the act [was] authorized to issue such rules, regulations, and orders as it deem[ed] necessary and appropriate" and could "bring action in the U.S. district court to enforce compliance with the act or any rule, regulation, or order thereunder, or . . . require the divestiture of any acquisition in violation of the act, and the court [could], upon a proper showing, grant a

**FOR PUBLICATION**

restraining order, injunction or other appropriate relief." Id. at 1604, 1605. In addition, "[c]riminal penalties [were] provided in the act." Id. at 1605.

Civil money penalties and other remedies for violations of the SLHCA were first codified in the Financial Institutions Regulatory and Interest Rate Control Act of 1978. See Pub. L. No. 95-630, § 106(c), 92 Stat. 3641 (1978). The legislative history states the following:

> Provides the financial institution supervisory agencies with additional powers over depository institutions. These powers are civil money penalties for violations of laws, regulations, and cease-and-desist orders; improved cease-and-desist authority; authority to require depository institutions holding companies to divest nondepository subsidiaries if those subsidiaries are causing damage to the depository institution subsidiaries of holding companies.

H.R. Rep. 95-1383, at 5 (1978), as reprinted in 1978 U.S.C.C.A.N. 9273, 9276-77.

As was the case for the text of the SLHCA, its legislative history clearly demonstrates the purpose of the statute to create a framework to regulate savings and loan holding companies. As part of this framework, the SLHCA includes remedies to enable the regulatory agency to enforce the provisions of the SLHCA. In each instance, the remedies are framed as powers of the regulatory agency, and there is no statement or implication that such powers are to be shared with private parties. Indeed, the text and legislative history of the SLHCA do not deny an implied private right of action, but "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Alexander, 532 U.S. at 290. There is simply an insufficient basis upon which to infer a private remedy. And the Court declines the invitation to do so.

The Court finds that the SLHCA, specifically 12 U.S.C. § 1467a(h)(1), does not contain an implied private right of action. As the Third Circuit wrote in American Trucking Ass'ns,

**FOR PUBLICATION**

Plaintiff's "efforts to realize such a right would be best directed at Congress by pressing for an amendment" to § 1467a.  458 F.3d at 304.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted with prejudice.


January 3, 2008                                                              **s/William H. Walls**
                                                                             United States Senior District Judge


**Appearances**

Joseph N. Froehlich, Esq.
Allen C. Wasserman, Esq.
Gregory T. Casamento, Esq.
Locke, Lord, Bissell & Liddell, LLP
885 Third Avenue
New York, NY 10022
        Attorneys for Plaintiff Spencer Bank, S.L.A.

Peter R. Bray, Esq.
Bray, Chiocca & Miller, LLC
Lanidex Executive Center
100 Misty Lane
Parsippany, NJ 07054-2710
        Attorney for Defendant Lawrence B. Seidman

Donald A. Robinson, Esq.
John B. Livelli, Esq.
Robinson & Livelli, Esqs.
Two Penn Plaza East
Suite 1100
Newark, NJ 07105-2237
        Attorneys for Defendants Seidman & Associates, LLC and Veteri Place Corporation

**FOR PUBLICATION**

Brian M. Dratch, Esq.
Franzblau Dratch, PC
Plaza One
354 Eisenhower Parkway
PO Box 472
Livingston, NJ 07039
      Attorney for Defendant Menlo Acquisition Corporation